IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **DANIEL POOLE**, <br><br> Plaintiff, <br><br> v. <br><br> **CITY OF BURBANK**, a Municipal Corporation, **OFFICER KARA KUSH** (Star No. 119), and **GREGORY PEROVICH** (Star No. 134), sued in their individual and official capacities, <br><br> Defendants. | No. 07 C 6355 |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Daniel Poole's ("Poole") seven count complaint arises from an incident on January 19, 2006, when he was pulled over, arrested, and allegedly subject to excessive force at the hands of defendant City of Burbank (the "City") police officers Kara Kush ("Kush") and Gregory Perovich ("Perovich")(together "defendant officers"). The City, also a defendant in this case, moves for summary judgment on all of Poole's claims against it, namely, his 42 U.S.C. § 1983 claims for unreasonable search and seizure (count I), excessive force (count II), false imprisonment (count III), and false arrest (count IV).

The defendant officers move for partial summary judgment on counts I, III, and IV. They argue that these claims fail because there was probable cause for Poole's initial detention and subsequent arrest, and that the claims are barred by Poole's

payment of a fine for failure to wear a seatbelt.  Both motions are granted for the reasons stated in this opinion.

I.

On January 19, 2006, at approximately 5:40 p.m. Kush observed Poole driving northbound in his vehicle on Cicero Avenue near 85th Street and purportedly believed him to be driving without having his seatbelt properly fastened.  The shoulder strap of the seat belt in Poole's vehicle is situated low and does not go over the driver's shoulder.  Kush activated her lights and sirens, to effectuate a traffic stop due to the alleged seatbelt violation.

Poole continued northbound on Cicero Avenue to 84th Street where he turned left.  Kush called for assistance when he did not pull over, indicating that the driver she was pursuing was refusing to stop.  Poole continued down 84th Street for another block and then turned right into the Burlington Coat Factory ("BCF") parking lot where he worked.  He drove near the entrance and stopped in a fire lane.  Kush approached Poole's car, obtained his license and insurance card, and returned to her vehicle to process that information.

In response to Kush's call for assistance, Perovich arrived at the BCF parking lot.  Kush remained in her car processing the license information while Perovich approached Poole's vehicle, allegedly for safety reasons.  The parties dispute the subsequent events, but agree that Poole and Perovich ended up fighting and

2

both of them sustained injuries. Poole was issued a citation for the alleged seatbelt violation, arrested, and charged with resisting a peace officer and aggravated battery. The seatbelt fine was paid and Poole was found guilty of that violation. He was found not guilty of the criminal charges at trial.

II.

Summary judgment is appropriate where the record shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The "court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact." *National Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). A genuine issue for trial exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). I must construe all facts in the light most favorable to the non-movant and draw all justifiable inferences in favor of that party. *See id.* at 255.

III.

The City moves for summary judgment on Poole's four § 1983 claims because it claims Poole cannot prove that his alleged

3

constitutional injuries were caused by "(1) the enforcement of an express policy of the [municipality], (2) a widespread practice that is so permanent and well settled as to constitute a custom or usage with the force of law, or (3) a person with final policymaking authority." *Latuszkin v. City of Chicago*, 250 F.3d 502, 504 (7th Cir. 2001). Poole proceeds on the second theory, but provides no evidence of a widespread practice or custom of condoning violations like those alleged by Poole. This is fatal to his claims against the City. *See Phelan v. Cook County*, 463 F.3d 773, 790 (7th Cir. 2006)("The plaintiff must introduce evidence demonstrating that the unlawful practice was so pervasive that acquiescence on the part of policymakers was apparent and amounted to a policy decision.")

Poole argues that he does not have to show a pervasive practice because one violation is enough where the City fostered "'a culture that permitted and condoned violations of policies that were designed to protect' individuals like Poole or where the violation was a 'highly predictable consequence' of the [City's] failure to act." (*See* Pl.'s Resp. pp. 14-15)(citations omitted). He provides no factual support for this position, noting only that Kush and Officer Gurra ("Gurra"), the officer who later investigated the disputed arrest-related events, both testified that the arrest was handled in a manner consistent with City policies. But these statements do not support Poole's claims

4

against the City because they were premised on a version of events that did not involve any constitutional violations.

Poole also argues that because Kush and Perovich were dating during the relevant time period, it was foreseeable that Perovich would have difficulty exhibiting restraint and was likely to be provoked into misbehavior. No authority or evidence is cited in support of this argument. In particular, plaintiff does not point to any evidence that the City knew Kush and Perovich were dating, that there was an express policy allowing or prohibiting dating among fellow police officers, or that there were other allegations of misconduct attributed to officers who were dating or married to each other.

Accordingly, the City's motion for summary judgment is granted.

IV.

The defendant officers do not challenge the § 1983 excessive force claim (count II) on summary judgment, but argue that the remaining Fourth Amendment claims arise from his initial stop and subsequent arrest, for which there was probable cause. Because a guilty finding was entered on the seatbelt violation and the related fine was paid, the defendant officers argue that *Heck v. Humphrey*, 512 U.S. 477 (1994) bars counts I, III, and IV. (*See* Defs. Mot. pp. 7-8). They also argue that regardless of *Heck*'s

application, Kush and Perovich are entitled to qualified immunity.[1] Both arguments are persuasive.

*Heck* holds that a civil claim for damages may not be pursued if its success would necessarily imply the invalidity of a criminal conviction. *Heck*, 512 U.S. at 486-87. However, if the plaintiff's claims, when successful, will not demonstrate the invalidity of any outstanding criminal judgment against him, they may proceed. *Id.* at 487. Poole's summary judgment response on counts I, III, and IV are premised on the invalidity of his seatbelt conviction and therefore, *Heck* bars these counts.

For example, in order to prove his claim for false arrest, Poole would have to show that he was seized without probable cause. *See Hadrick v. City of Bolingbrook*, 522 F.3d 758, 762 (7th Cir. 2008). That determination is made based on whether a reasonable person, innocent of any crime, would have concluded that he was not free to leave. *Id.* Poole cannot claim he was "innocent of any crime" without directly challenging the validity of his seatbelt conviction. The same is true of the unlawful seizure and false imprisonment counts, because he cannot show he was seized or held

---

[1] In their initial motion, defendants argue that Poole's false imprisonment claim (count III) is duplicative of his claims for unlawful seizure (count I) and false arrest (count IV). Poole does not disagree, but rather responds without distinguishing the bases for his false arrest and false imprisonment claims. In addition, his count I arguments focus on excessive force, even though that claim was not raised in defendants' motion.

without probable cause unless he directly challenges the underlying seatbelt conviction.

Moreover, in his complaint and response, Poole does exactly what *Heck* prohibits - he both implies and expressly argues that he is innocent of the seatbelt conviction. *See e.g.*, (Sec. Am. Compl. ¶ 11.)(alleging Kush "advised that she had pulled him over for allegedly failing to wear a seat belt"); (Pl.'s SOF ¶ 9)("Poole was, in fact, wearing his seatbelt.");(Pl.'s Resp. 6-9.)(various arguments why Poole is not guilty of the seatbelt violation);(Poole Trial Test., Defs.' Ex. A, pp. 184-85).[2] Accordingly, counts I, III, and IV are barred by *Heck*.

---

[2]  
Q Now, when you were driving there that evening, you didn't have your seat belt on, did you?  
A Yes, I did.  
Q You did have your seat belt on?  
A Yes.  
Q Well, you were issued a ticket for that offense, weren't you?  
A Yes.  
Q You paid a $55 fine for that offense, didn't you?  
A Yes.  
Q Why did you pay the fine for not wearing a seat belt when you say you had one on?  
A My grandfather told me to pay the ticket because he didn't want me driving on a ticket.  
Q So you wanted to get your driver's license back?  
A Exactly.  
Q So you paid a $55 fine and admitted you weren't wearing a seat belt, correct?  
A Yes.

7

V.

For the foregoing reasons, I grant the City's motion for summary judgment on counts I-IV and grant the defendant officers' motion on counts I, III, and IV.

ENTER ORDER:

_____
**Elaine E. Bucklo**
United States District Judge

Date: July 10, 2009